# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MY CANARY LLC and CHICAGO
AVIATION, INC.,

     Plaintiffs,

     v.

CESSNA AIRCRAFT COMPANY, TEXTRON
AVIATION, CESSNA SERVICE DIRECT,
LLC, d/b/a MESA CITATION SERVICE,
SUSIEAIR, LLC, and SCOTT BENDER,

     Defendants.

No. 16 CV 4000

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

My Canary LLC and Chicago Aviation, Inc. bring various contract and tort claims against defendants Cessna Aircraft Company, Textron Aviation, Cessna Service Direct, LLC, (d/b/a Mesa Citation Service), SusieAir, LLC, and Scott Bender arising out of the allegedly botched sale of a Cessna Mustang aircraft. The Cessna defendants (Cessna Aircraft, Textron Aviation, and Mesa) move to dismiss plaintiffs' second amended complaint for lack of personal jurisdiction, for improper venue, and for failure to state a claim. For the following reasons, the motion to dismiss is granted in part.

## I.    Background

The following allegations are taken from the plaintiffs' second amended complaint. [60].[1] In May 2014, SusieAir, LLC, engaged a broker, Chicago Aviation,

---

[1] Bracketed numbers refer to entries on the district court docket.

Inc., to sell a Cessna Mustang 510 aircraft. In early June 2014, My Canary LLC made an offer to purchase the Mustang. Chicago Aviation communicated the offer to SusieAir through Scott Bender, SusieAir's principal. My Canary and SusieAir entered into an aircraft purchase agreement on June 13, 2014. The agreement provided for a closing date of June 25, 2014, and provided that the sale was contingent on the results of a pre-purchase inspection of the aircraft—called a "pre-buy survey"—at My Canary's expense. My Canary could accept the inspection results, subject to SusieAir's obligation to correct any discrepancies, or could reject the aircraft and cancel the agreement. Bender also agreed to pay Chicago Aviation a 1% commission of the Mustang's gross sale price of $1.7 million. My Canary paid a deposit into escrow and arranged financing to purchase the plane. Cessna Service Direct, LLC, d/b/a Mesa Citation Service (Mesa) represented to My Canary that it would perform the inspection on its behalf. Mesa began conducting the pre-buy survey of the Mustang in Mesa, Arizona, on June 18, 2014.

Unbeknownst to My Canary and Chicago Aviation, however, SusieAir had already entered into a contract with Cessna Aircraft Company in or around May 2014. Under the terms of this deal, SusieAir would purchase a Cessna Citation M2 aircraft from Cessna and would trade-in the Mustang to reduce the Citation's price. SusieAir would also receive a discount off the Citation's sales price if the sale was completed by June 27, 2014, the end of Cessna's fiscal quarter. While Mesa was conducting the pre-buy survey for My Canary, SusieAir was communicating with Cessna Aircraft and Textron Aviation (Cessna Aircraft's parent company) about

2

trading in the Mustang for the Citation. Mesa, Textron Aviation, and Cessna Aircraft were aware of SusieAir's deal with My Canary.

While Mesa was conducting the pre-buy survey, it discovered what appeared to be corrosion within the Mustang's engines. On June 23, 2014, a Cessna engineer specializing in Mustang models advised Mesa that the only way to determine the seriousness of the corrosion (to determine whether it was a discrepancy under the purchase agreement) was to partially dismantle the engines. Mesa communicated this information to SusieAir and estimated that the work would cost around $1,100 to $1,300 to perform. SusieAir did not inform My Canary about the work necessary to determine whether corrosion constituted a deficiency under their agreement. The next day, a Mesa maintenance supervisor told one of My Canary's principals that he had been instructed by a Cessna representative to stop cooperating with My Canary because Cessna had purchased the Mustang. On June 25, 2014, the contractual closing date, SusieAir sent My Canary notice that it was canceling the agreement because My Canary had missed the deadline to close. Additional inspections of the Mustang performed a few days later revealed that the corrosion was only in the "layers" of the engine and would not have required significant repair.

My Canary, Chicago Aviation, and Richard Bodee (Chicago Aviation's principal) brought suit against Cessna Aircraft, Textron Aviation, SusieAir, and Bender in the District of New Jersey. [1]. The complaint was dismissed without prejudice for inadequate allegations as to diversity of citizenship. [23]; [24]. The plaintiffs filed an amended complaint, adding Mesa as a defendant, [30], and the

defendants filed motions to dismiss. [33]; [34]. The court ordered the parties to show cause why the case should not be transferred under 28 U.S.C. § 1404(a) to the District of Kansas or the Northern District of Illinois. [40]. While briefing the issue, My Canary, Chicago Aviation, SusieAir, and Bender agreed that, with the exception of Mesa's pre-buy survey in Arizona, the parties appeared to have largely communicated with each other through phone, e-mail, or mail from their respective locations: SusieAir and Bender in Texas, Cessna Aircraft and Textron Aviation in Kansas, Chicago Aviation in Illinois, and My Canary in New Jersey. [42] at 6; [44] at 4. My Canary also stated that its sole Illinois principal is a silent partner who played no part in the transactions at issue in this case. [42] at 5. The court transferred the case from New Jersey to this district, finding that plaintiffs My Canary, Chicago Aviation, and Bodee were all Illinois citizens, that Bodee and Chicago Aviation were contacted in Illinois by My Canary, that Bodee and Chicago Aviation contacted SusieAir from Illinois through Bender, that the negotiations concerning the purchase of the airplane were conducted through Bodee in Illinois, and that the plaintiffs were asserting a violation of the Illinois Consumer Fraud Act. [45]; [46].

After the case was transferred, the plaintiffs filed a second amended complaint, which dropped Bodee as a plaintiff. This second amended complaint brought several claims against the Cessna defendants: breach of contract, breach of implied covenant, and fraud claims against Mesa, and tortious interference and conspiracy claims against Cessna Aircraft, Textron Aviation, and Mesa. [60]. The

Cessna defendants now move to dismiss the case for lack of personal jurisdiction, for improper venue, and for failure to state a tortious interference claim.

## II.    Personal Jurisdiction

### A.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. Plaintiffs have the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiffs need only make a prima facie showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, all well-pleaded facts alleged in the complaint are taken as true and any factual disputes are resolved in plaintiffs' favor. *Id.* Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. Because the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by federal due process, here the state statutory and federal constitutional inquiries merge, *Tamburo*, 601 F.3d at 700, and a court may exclusively analyze federal due process limitations on personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

### B.    Analysis

The plaintiffs assert that both general and specific jurisdiction exists over the Cessna defendants (Cessna Aircraft, Textron Aviation, and Mesa). General jurisdiction exists only when the defendant's affiliations with the forum state "are

5

so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For an individual, the "paradigm forum" for general jurisdiction is the individual's domicile; for a corporation, it is the place of incorporation and principal place of business. *Id.* at 760 (citing *Goodyear*, 564 U.S. at 924). Specific jurisdiction exists when "the defendant's suit-related conduct creates a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). Personal jurisdiction is a claim-specific inquiry, and a plaintiff bringing multiple claims must establish specific jurisdiction for each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (citing 5B Wright & Miller Fed. Prac. & Proc. Civil § 1351 n.30 (3d ed. 2004)).

### a. General Jurisdiction

To establish minimum contacts for general jurisdiction, the plaintiffs seek to consider the jurisdictional contacts of the Cessna defendants all together—including the jurisdictional contacts of their parent corporation Textron, Inc., who is not a defendant. But the jurisdictional contacts of a parent or subsidiary corporation cannot be imputed to each other, absent a showing that the parent exerts "an unusually high degree of control" over the subsidiary or that the subsidiary's "corporate existence is simply a formality." *Abelesz v. OTP Bank*, 692 F.3d 638, 658–59 (7th Cir. 2012) (quoting *Purdue Res. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003)).

That showing has not been made here. Plaintiffs argue that the Cessna defendants are wholly owned subsidiaries of each other and are in turn wholly owned by Textron, Inc., and that the Cessna defendants will often work through their respective subsidiaries and parent companies to achieve their common goals. To show the close relationship among the Cessna defendants, the plaintiffs point to their allegations that Textron Aviation negotiated the trade-in of the Mustang on Cessna Aircraft's behalf and that Cessna Aircraft told Mesa to stop cooperating with My Canary. [60] ¶¶ 31, 43–44. Plaintiffs also point to Textron Aviation's website listing the Cessna line of aircraft and the Mesa Service Center, and to the Cessna defendants' shared registered agent in Illinois. [71-1]; [71-3]. These allegations and connections do not suggest either an unusually high degree of control or that the corporate forms are a mere formality. "Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent," *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998), and a normal parent-subsidiary relationship is insufficient to impute jurisdictional contacts. *See id.* at 540–41; *Abelesz*, 692 F.3d at 658–59; *Purdue Res.*, 338 F.3d at 788 n.17; *see also Daimler*, 134 S.Ct. at 760–62 (assuming, without deciding, that in some circumstances the jurisdictional contacts of an in-state subsidiary may be imputed to a foreign parent but holding that a corporation may only be subject to general jurisdiction where the corporation's contacts are so "continuous and systematic" that it is "essentially at home" in that state). The plaintiffs must show that the jurisdictional contacts of each defendant support

general jurisdiction. Accordingly, the jurisdictional contacts of Textron, Inc., with Illinois are not necessarily attributable to its subsidiaries.

None of the Cessna defendants are incorporated or have their principal place of business in Illinois. Cessna Aircraft and Textron Aviation are incorporated and have their principal place of business in Kansas. Mesa (an LLC) is wholly owned by Cessna Aircraft, which in turn is wholly owned by Textron Aviation, which is wholly owned by Textron, Inc., a Delaware corporation with its principal place of business in Rhode Island. Only in an "exceptional case" will general jurisdiction be found in a forum other than a corporation's place of incorporation or principal place of business. *Daimler*, 134 S.Ct. at 761 n.19. The plaintiffs must show that the Cessna defendants' individual affiliations with Illinois "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*. at 754 (quoting *Goodyear*, 564 U.S. at 919).

The plaintiffs have not shown that any of the Cessna defendants are "essentially at home" in Illinois. Mesa's sole jurisdictional contact is having a registered agent in Illinois.[2] [71-3] at 3. Even before *Daimler*, the Seventh Circuit

---

[2] The affidavit of Robert Scurfield, Cessna Aircraft's assistant general counsel, states that Mesa does not have a registered agent in Illinois, [63-2] ¶ 9, but this is contradicted by the Illinois Secretary of State website, which states that Mesa has a registered agent in Springfield, Illinois. [71-3] at 3. The plaintiffs also object that Scurfield's affidavit lacks foundation for his personal knowledge of the business activities of Cessna Aircraft's parent companies, especially when Scurfield describes the Cessna defendants as "separate legal entities." [63-2] ¶ 2. Scurfield is an assistant general counsel for one of the companies and said that he had personal knowledge of the information contained in his affidavit. [63-2] ¶ 1. This is sufficient foundation because it is reasonable to infer that an in-house lawyer would have personal knowledge of such aspects of related companies' business. Of course, at

held that registering to do business in a state, "standing alone," cannot satisfy due process required to assert personal jurisdiction. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990). After *Daimler*, courts in this district have continued to hold that registering to do business in a state or designating a registered agent for service of process is insufficient to make a corporation "at home" in a state. *See Leibovitch v. Islamic Republic of Iran*, No. 08 C 1939, 2016 WL 2977273, at *8 (N.D. Ill. May 19, 2016) (collecting cases). Mesa is not at home in Illinois.

Cessna Aircraft has more contacts with Illinois, but these are not so "continuous and systematic" as to render it essentially at home in Illinois either. Like Mesa, Cessna Aircraft has a registered agent in Illinois. [63-2] ¶ 8; [71-3] at 2. Cessna Aircraft maintains that it does not own any property in Illinois, does not specifically target any advertisements to Illinois, does not pay taxes in Illinois, and has no bank accounts or telephone listings in Illinois. [63-2] ¶ 7. The plaintiffs counter that Cessna Aircraft maintains offices, employees, and agents in Illinois to sell aircrafts. In support, the plaintiffs attach the LinkedIn profiles for a few current and former Cessna Aircraft and Textron Aviation sales employees, whose profiles indicate that they recently worked or currently work in sales in the Chicago area. [71-7]. The plaintiffs also attach the website printout from a separate company, J.A. Air, referencing Textron's 2016 purchase of Cessna Aircraft, after

---

this stage, plaintiff's burden is a low one, and factual disputes are resolved in plaintiffs' favor. *Tamburo*, 601 F.3d at 700.

which Cessna began selling direct. [71-8] at 1. The plaintiffs also assert that Cessna Aircraft maintains pilot training facilities in Illinois, identifying three Cessna Aircraft pilot centers in Illinois: FSX Chicago LLC in Oak Park, Illinois, Illinois Aviation Academy in West Chicago, Illinois, and J.A. Flight Training in Sugar Grove, Illinois. [71-9]. In addition, there are various "Cessna Authorized Service Centers" in Illinois, including Elliot Aviation in Milan, Illinois, West Star Aviation in East Alton, Illinois, and J.A. Air, Inc., in Sugar Grove, Illinois. [71] at 9.

These jurisdictional contacts are not enough. Having a few employees in Illinois for sales and having a few authorized service centers or pilot centers in Illinois (apparently run by other companies) are not the "continuous and systematic" contacts making Cessna Aircraft "at home" in Illinois. *See, e.g., Kipp*, 783 F.3d at 698 (attending annual trade shows in Illinois, collecting email addresses of Illinois residents for marketing purposes, targeting Illinois customers through special packages, and successfully attracting Illinois customers were jurisdictional contacts "nowhere close to the *Goodyear/Daimler* standard"); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) ("extensive and deliberate" jurisdictional contacts related to the marketing and sale of internet domain name registrations, contracts with Illinois customers, and hosting websites accessible to Illinois customers were insufficient for general jurisdiction because it would be unfair to require the defendant to answer in Illinois "for any conceivable claim that any conceivable plaintiff might have against it"). "At home" is not synonymous with "doing business"—"[a] corporation that operates in many places can scarcely be

10

deemed at home in all of them," *Daimler*, 134 S.Ct. at 762 n.20, and "a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 757 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

The plaintiffs assert similar jurisdictional contacts for Textron Aviation, which admits that it has a registered agent in Illinois but claims that it does not own property in Illinois, does not specifically target any advertisement to Illinois, does not pay taxes in Illinois, and has no bank accounts or telephone listings in Illinois. [63-2] ¶¶ 10–11.[3] The plaintiffs point to a few sales employees' presence in Illinois, [71-7], and its website listing Cessna Authorized Service Centers in Illinois. [71] at 9. These contacts are not enough to show that Textron Aviation is essentially at home in Illinois. There is no general jurisdiction in Illinois for the Cessna defendants.

### 2. *Specific Jurisdiction*

Specific jurisdiction exists when "the defendant's suit-related conduct creates a substantial connection with the forum State." *Walden*, 134 S.Ct. at 1121. This connection "must arise out of arise out of contacts that the 'defendant *himself*' creates with the forum State," *id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), and "the plaintiff cannot be the only link between the defendant and the forum." *Id.* (citing *Burger*, 471 U.S. at 478). Although specific

---

[3] Paragraph 10 of the affidavit states that Textron Aviation has a registered agent in Illinois, but paragraph 11 states that it does not have a registered agent in Illinois. *See* [63-2] ¶¶ 10–11.

jurisdiction must be shown claim by claim, *Seiferth*, 472 F.3d at 275, the plaintiffs only address specific jurisdiction for the Cessna defendants (as a group) based on their alleged tortious interference. The plaintiffs argue that the defendants directed their tortious conduct at Illinois because the Cessna defendants knew of SusieAir's contract with Chicago Aviation and because My Canary is an Illinois citizen (through its silent principal). The plaintiffs argue that the fact that wrongful conduct did not occur in Illinois is irrelevant, citing to *Hunter Douglas Metals, Inc. v. Edward C. Mange Trading Co.*, 586 F.Supp. 926, 928–29 (N.D. Ill. 1984) and *Publication Management Inc. v. American Defense Preparedness Association*, No. 89 C 1110, 1989 WL 165056, at \*10 (N.D. Ill. Dec. 29, 1989), which relies on *Hunter Douglas*, for the proposition that personal jurisdiction can be found as long as defendants were aware that the effects of their conduct would be felt in that state. But *Hunter Douglas* precedes the Supreme Court's clarification of specific jurisdiction in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) and *Walden v. Fiore*, 134 S.Ct. 1115 (2014), which limit the specific jurisdiction inquiry to "the defendant's suit-related conduct." *Walden*, 134 S.Ct. at 1121.

Plaintiffs also rely on *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 910 (N.D. Ill. 2003) for the proposition that even if all other conduct takes place elsewhere, specific jurisdiction is proper in Illinois if the injury transpires in Illinois. *Interlease Aviation*, however, relied on *Publication Management* and *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). After *Walden*, the Seventh Circuit acknowledged the tension in its case law

caused by *Janmark* and clarified that "after *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (quoting *Walden*, 134 S.Ct. at 1122). For specific jurisdiction, courts must assess the defendant's contacts with the forum state, not merely where the plaintiff's injury occurred. *Walden*, 134 S.Ct. at 1125.

Cessna Aircraft and Textron Aviation's allegedly tortious conduct consists of communicating with SusieAir to effectuate the trade-in of the Mustang and telling Mesa to stop cooperating with My Canary in regards to the pre-buy survey in Arizona, thereby interfering with My Canary's agreement to purchase the Mustang from SusieAir. That contract was negotiated through Chicago Aviation, in Illinois, but the Cessna defendants were not involved with making that contract—they are alleged to have interfered with it through their actions elsewhere. Plaintiffs make no argument that any of the Cessna defendants' alleged tortious conduct occurred in Illinois. Although plaintiffs also brought a conspiracy claim against all of the defendants, they do not address any jurisdictional contacts relating to this claim and do not argue that any activities in furtherance of the alleged conspiracy were purposefully directed at Illinois. *See, e.g., Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983) (recognizing conspiracy theory of jurisdiction). As for My Canary's breach of contract, fraud, and tortious interference claims against Mesa, the plaintiffs fail to identify any jurisdictional contacts with Illinois

arising out of the pre-buy survey agreement,[4] or out of Mesa's alleged termination of the pre-buy inspection and refusal to communicate with My Canary.

The plaintiffs have failed to make a prima facie showing that the Cessna defendants have sufficient minimum contacts with Illinois for general or specific jurisdiction. Textron Aviation, Cessna Aircraft, and Mesa are dismissed for lack of personal jurisdiction. Because there is no personal jurisdiction over the Cessna defendants, I do not reach their arguments for dismissal based on improper venue and failure to state a claim.

## III.    Conclusion

The Cessna defendants' motion to dismiss, [63], is granted in part. The Cessna defendants are dismissed without prejudice for lack of personal jurisdiction.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 1/18/2017

---

[4] In determining whether specific jurisdiction exists for breach of contract, it is only the "dealings between the parties in regard to the disputed contract" that are relevant to minimum contacts analysis. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 717 (7th Cir. 2002). My Canary does not allege that the pre-buy survey agreement was negotiated, executed, or to be performed in Illinois. The agreement is governed by Kansas law, but lacks a forum selection clause. [60-3] at 10.