| | |
|---|---|
| MY CANARY LLC and CHICAGO AVIATION, INC., | |
| Plaintiffs, | No. 16 CV 4000 |
| v. | Judge Manish S. Shah |
| SUSIEAIR, LLC, and SCOTT BENDER, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

My Canary LLC and Chicago Aviation, Inc., allege various contract and tort claims against SusieAir, LLC, and its owner, Scott Bender, for the botched sale of a Cessna Mustang aircraft. SusieAir and Bender move to dismiss for failure to state a claim, and Bender also moves to dismiss for lack of personal jurisdiction. For the following reasons, the motion to dismiss is granted in part, denied in part.

## I. Background

The following allegations are taken from the plaintiffs' second amended complaint. [60].[1] In May 2014, SusieAir, LLC, engaged a broker, Chicago Aviation, Inc., to sell SusieAir's Cessna Mustang 510 aircraft. By early June 2014, My Canary LLC made an offer to purchase the Mustang. Chicago Aviation communicated the offer to SusieAir through Scott Bender, SusieAir's sole member and director, who negotiated with My Canary through Chicago Aviation. My Canary and SusieAir

---

[1] Bracketed numbers refer to entries on the district court docket.

entered into an aircraft purchase agreement on June 13, 2014. The agreement provided for a closing date of June 25, 2014. It also provided that My Canary would have an exclusive right to purchase the Mustang and that the sale was contingent on the results of a pre-purchase inspection of the aircraft—called a "pre-buy survey"—at My Canary's expense. My Canary could accept the inspection results, subject to SusieAir's obligation to correct any discrepancies, or could reject the aircraft and cancel the agreement. Bender also agreed to pay Chicago Aviation a 1% commission of the Mustang's gross sale price of $1.7 million. My Canary paid a deposit into escrow and arranged financing to purchase the plane. Cessna Service Direct, LLC, d/b/a Mesa Citation Service (Mesa) began conducting the pre-buy survey of the Mustang in Mesa, Arizona, on June 18, 2014.

Unbeknownst to My Canary and Chicago Aviation, however, SusieAir had already entered into a contract with Cessna Aircraft Company in or around May 2014. Under the terms of the deal, SusieAir would trade-in the Mustang for $1.5 million off the purchase price of a Cessna Citation M2 aircraft. SusieAir would also receive a $500,000 discount if the Cessna sale was completed by June 27, 2014 (the end of Cessna's fiscal quarter). While Mesa was conducting the pre-buy survey, SusieAir was communicating with Cessna Aircraft and Textron Aviation (Cessna Aircraft's parent company) about trading in the Mustang. Mesa and Cessna Aircraft were aware of SusieAir's deal with My Canary.

During the pre-buy survey, Mesa discovered what appeared to be corrosion within the Mustang's engines. On June 23, 2014, a Cessna engineer advised Mesa

that the only way to determine the seriousness of the corrosion (to determine whether it was a discrepancy under the purchase agreement) was to partially dismantle the engines to permit better visualization. Mesa communicated this information to SusieAir and estimated that the work would cost around $1,100 to $1,300 to perform. SusieAir did not inform My Canary about the work necessary to determine whether corrosion constituted a deficiency under their agreement. The next day, a Mesa maintenance supervisor told one of My Canary's principals that a Cessna representative had instructed him to stop cooperating with My Canary because Cessna had purchased the Mustang. On June 25, 2014, the contractual closing date, SusieAir sent My Canary notice that it was canceling the agreement because My Canary had missed the deadline to close. Additional inspections of the Mustang performed a few days later revealed that the corrosion was only in the "layers" of the engine and would not have required significant repair.

My Canary and Chicago Aviation originally brought suit against Cessna Aircraft, Textron Aviation, SusieAir, and Bender in the District of New Jersey. [1]. The case was transferred to this district. [45]; [46]. My Canary and Chicago Aviation then filed a second amended complaint. [60]. My Canary and Chicago Aviation bring claims against SusieAir for breach of contract and breach of the implied covenant of good faith and fair dealing (Counts 1, 5, 13, 14). My Canary also brings a constructive trust claim against SusieAir (Count 12) and claims against SusieAir and Bender for common law fraud, consumer fraud, and conspiracy (Counts 2, 4, 7). The Cessna defendants were dismissed for lack of personal

jurisdiction. [81]. Bender also moves to dismiss for lack of personal jurisdiction, and SusieAir and Bender move to dismiss all claims against them for failure to state a claim.

## II.    This Court Has Personal Jurisdiction Over Bender.

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. Plaintiffs have the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiffs need only make a prima facie showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, all well-pleaded facts alleged in the complaint are taken as true and any factual disputes in affidavits are resolved in plaintiffs' favor. *Id*. Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. Because the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by federal due process, the state statutory and federal constitutional inquiries merge. *Tamburo*, 601 F.3d at 700.

My Canary makes no argument for general jurisdiction over Bender, a Texas citizen, so it must make a prima facie showing of jurisdictional facts sufficient to support specific jurisdiction. Specific jurisdiction exists when the defendant's suit-related conduct "create[s] a substantial connection with the forum State," *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014), and is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed

4

himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause. *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Bender argues that his alleged actions were taken on behalf of SusieAir and, under the fiduciary shield doctrine, those jurisdictional contacts cannot be attributed to him personally. My Canary responds that the fiduciary shield doctrine does not apply because Bender is SusieAir's sole member and director and was responsible for negotiating with My Canary. The fiduciary shield doctrine is recognized in Illinois (but not all states) and "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (citing *Rollins v. Ellwood*, 141 Ill.2d 244, 267–78 (1990)). The idea behind the doctrine is that it would be unfair to subject an employee to personal jurisdiction for acts within the scope of their employment when the employee "has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer." *Rollins*, 141 Ill.2d at 280. It is an equitable doctrine subject to judicial discretion. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981); *In re Mahurkar*

*Double Lumen Hemodialysis Catheter Patent Litig.*, 750 F.Supp. 330, 335 (N.D. Ill. 1990) (Easterbrook, J., sitting by designation).

Because the doctrine is grounded in fairness, the shield does not apply if the individual was also acting to serve his personal interests (including pecuniary interest), *Rice*, 38 F.3d at 912, and does not apply when the individual has discretion over his actions. *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *3 (N.D. Ill. Oct. 30, 2002) (collecting cases). Exceptions to the fiduciary shield doctrine are found, for example, where a company is the alter ego of a defendant or where the defendant is a high-ranking company officer or shareholder with decision-making authority and a direct financial stake in the company. *See Marine Midland*, 664 F.2d at 903; *In re Mahurkar*, 750 F.Supp. at 335; *Consumer Benefit*, 2002 WL 31427021, at *3 (collecting cases). Although Bender argues that the complaint merely lumps him and SusieAir together without alleging his personal participation, the complaint alleges that SusieAir (who concedes personal jurisdiction) hired an Illinois company (Chicago Aviation) to advertise and facilitate the sale of the Mustang. Bender, who was simultaneously in communication with Cessna, allegedly received My Canary's offer to purchase the Mustang and took charge of the negotiations with My Canary (an Illinois and New Jersey LLC), passing communications containing the alleged misrepresentations and omissions through Chicago Aviation to induce My Canary into signing the aircraft purchase agreement. An out-of-state defendant's "lulling" or fraudulent communications may be sufficient to support personal jurisdiction for a fraud claim,

*Felland v. Clifton*, 682 F.3d 665, 675–76 (7th Cir. 2012), and My Canary has made a prima facie showing that Bender, as owner, has a direct financial stake in SusieAir, and that, as its sole director, he had discretion over SusieAir's representations to and negotiations with My Canary. Bender is not an employee whose jurisdictional contacts with Illinois arose pursuant to another's orders, and his actions go beyond mere ownership of the corporation to supply the connection to Illinois. There is a prima facie showing that he negotiated with and made alleged misrepresentations to My Canary through Chicago Aviation, while aware that SusieAir was simultaneously striking a deal with Cessna Aircraft. In these circumstances, the fiduciary shield doctrine does not apply to preclude personal jurisdiction over Bender.

Bender also argues that My Canary has not articulated any facts to pierce the corporate veil and that, under New Jersey law, a shareholder cannot be liable for a company's acts. But personal jurisdiction does not turn on the issue of Bender's personal liability for SusieAir's actions, it turns on *Bender's* contacts with Illinois. *See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000) (liability and personal jurisdiction are "two separate inquiries"). Bender is not being sued just as SusieAir's shareholder for SusieAir's actions. The claims asserted against Bender seek to hold him liable for his alleged role (as SusieAir's director and negotiator) in defrauding and conspiring

to defraud My Canary.[2] While personal liability may be a related issue, it is a defendant's suit-related contacts with the forum that create specific jurisdiction, *Walden*, 134 S.Ct. at 1121, and a finding of personal jurisdiction does not require piercing the corporate veil. *See Consumer Benefit*, 2002 WL 31427021, at *3 (fiduciary shield doctrine does not protect high-ranking officers who are in a position to decide whether Illinois jurisdictional contacts should be made at all); *In re Mahurkar*, 750 F.Supp. at 335 ("One common reason to deny defendants the benefit of the shield is failure to maintain adequate separation between the person and the corporation—perhaps not enough of a breakdown to justify holding the person liable for the corporation's debts, but enough of one to justify treating the personal acts as a source of personal (as opposed to corporate) liability."); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 136–37 (N.D. Ill. 1989) (alter ego exception to the fiduciary shield doctrine requires only a "minimally viable" showing that the corporation is a "sham") (collecting cases). Here, the inquiry for specific jurisdiction is whether Bender has sufficient suit-related contacts with Illinois and whether the fiduciary shield doctrine protects him from personal jurisdiction for actions taken on behalf of SusieAir. For the above-stated reasons, Bender is not protected by the fiduciary shield doctrine.

---

[2] The plaintiffs point out that, under the participation theory of liability, New Jersey allows a corporate officer to be held personally liable for an intentional tort or statutory violation committed by the corporation when the officer is sufficiently involved in its commission, without requiring the corporate veil to be pierced. *See Allen v. V & A Bros.*, 208 N.J. 114, 130–36 (2011). But whether Bender can be held personally liable for SusieAir's alleged acts is not dispositive of personal jurisdiction and is a "necessarily fact-sensitive determination" not amenable to adjudication upon a motion to dismiss. *Id.* at 135.

Bender does not argue that exercising personal jurisdiction over him would offend traditional notions of fair play and substantial justice, and it does not. Relevant factors include the burden on Bender, Illinois's interest in adjudicating the dispute, Bender's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and states' shared interest in further fundamental substantive social policies. *See Tamburo*, 601 F.3d at 709 (citing *Burger King*, 471 U.S. at 477). It will not significantly burden Bender to defend claims in Illinois. Although a Texas citizen, his company has conceded personal jurisdiction. Given his role as owner, director, and negotiator with My Canary, Bender will be significantly involved in the case regardless of the claims against him personally. He also shares an attorney with the company. Illinois has an interest in adjudicating a dispute over allegedly tortious conduct against resident companies, and resolving these related issues in a single litigation comports with notions of fair play.

## III. The Complaint States Claims for Breach of Contract and Fraud.

### A. Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 680–82. With a 12(b)(6) motion, a court may only consider allegations in the complaint, documents attached to the complaint, and documents that are both

referred to in the complaint and central to its claims. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

**B.    Analysis**

My Canary and Chicago Aviation bring claims against SusieAir for breach of contract and breach of the implied covenant of good faith and fair dealing (Counts 1, 5, 13, 14). My Canary also brings a constructive trust claim against SusieAir (Count 12) and claims against SusieAir and Bender for common law fraud, violating the New Jersey Consumer Fraud Act, and conspiracy (Counts 2, 4, 7). SusieAir and Bender move to dismiss all claims against them for failure to state a claim.

1.    *Breach of Contract and Breach of Implied Covenant*

To state a claim for breach of contract, a plaintiff must allege that the parties entered into a valid contract, the defendant failed to perform its obligations under the contract, and the plaintiff sustained damages as a result. *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007).[3] Parties may also make contractual liability dependent upon the performance of a condition precedent. *Liberty Mut. Ins. Co. v. President Container, Inc.*, 297 N.J. Super. 24, 34 (App. Div. 1997). Under New Jersey law, every contract also contains an implied covenant of good faith and fair dealing requiring that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). This implied covenant is breached if a party "acts in bad faith or engages in some other

---

[3] The parties both cite New Jersey law, which governs the contract. [60-2] ¶ 8.20.

form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (citing *Sons of Thunder*, 148 N.J. at 424). SusieAir asserts that the plaintiffs fail to state breach of contract and breach of implied covenant claims because conditions precedent were not satisfied; SusieAir also argues that My Canary has no recoverable damages. The plaintiffs respond that any unfulfilled conditions precedent were either excused or prevented by SusieAir and that My Canary sufficiently alleged recoverable damages.

### a. Conditions Precedent

Federal Rule of Civil Procedure 9(c) states that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Accordingly, "the pleading of conditions precedent [under Rule 9(c)] falls outside the strictures of *Iqbal* and *Twombly*." *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 112 (3d Cir. 2014); *see* 5A Wright & Miller Fed. Prac. & Proc. Civ. § 1303 (3d ed.) (Rule 9(c) permits allegations of performance of conditions precedent to be couched in general and conclusory terms). The complaint alleges that My Canary paid the deposit into escrow, arranged for the pre-buy survey, and was ready and willing to close on the Mustang, but that SusieAir concealed the amount of work required to determine whether a discrepancy existed, that Mesa stopped cooperating with My Canary because of SusieAir's side deal with Cessna Aircraft, and that SusieAir already decided to cancel the agreement prior to closing. These allegations sufficiently allege performance of conditions precedent under Rule 9(c).

Plaintiffs have also plausibly alleged SusieAir's interference with any unperformed conditions precedent. SusieAir identifies two conditions precedent required before closing on the Mustang: (1) under paragraph 3.5.1, My Canary was required to give SusieAir a Technical Acceptance Letter accepting the Mustang, and (2) under paragraphs 4.2.4 and 4.3.3, My Canary was required to give the escrow agent several documents and items, including the balance of the purchase price. But, as My Canary argues, paragraph 3.5.1 required delivery of the acceptance letter four days after My Canary received the final written report of the pre-buy survey. The complaint alleges that Mesa stopped cooperating with My Canary because SusieAir had already arranged to sell the Mustang to Cessna Aircraft. A condition precedent may be excused if its performance was prevented by the other party. *Creek Ranch, Inc. v. New Jersey Tpk. Auth.*, 75 N.J. 421, 432 (1978) (citing 5 Williston, Contracts, § 677 at 231–32 (3d ed. 1957)). Also, where a party "has acted in bad faith, that party will not escape liability on a contract even though the other party has failed to satisfy a condition precedent." *Allstate Redevelopment Corp. v. Summit Assocs., Inc.*, 206 N.J. Super. 318, 325 (App. Div. 1985).

The series of events alleged in the complaint allow a plausible inference that SusieAir's actions prevented My Canary from delivering the acceptance letter and made the other closing conditions pointless because Cessna had purchased the Mustang and SusieAir had already decided to walk away from the agreement with My Canary. Whether My Canary actually performed all possible conditions precedent and whether certain conditions were excused or prevented by SusieAir's

actions are factual issues not ripe for adjudication at the motion to dismiss stage. *See Ward v. Merrimack Mut. Fire Ins. Co.*, 332 N.J. Super. 515, 522–27 (App. Div. 2000) (whether condition precedent was excused under prevention doctrine was factual issue); 5A Wright & Miller Fed. Prac. & Proc. Civ. § 1303 (3d ed.) (challenging an allegation that conditions precedent have been performed raises a disputed issue "that may be resolved only on a summary judgment motion or at trial");.[4] For now, My Canary has sufficiently alleged performance of conditions precedent and SusieAir's plausible interference.

On reply, SusieAir maintains that Chicago Aviation failed to respond to SusieAir's argument that the Mustang's sale was a condition precedent to its commission. But Chicago Aviation joined in My Canary's argument that any failure of conditions precedent was excused or caused by SusieAir's actions. *See* [70] at 5–7. For the same reasons, SusieAir's arguments fail as to Chicago Aviation's breach of contract and implied covenant claims. The plaintiffs have sufficiently alleged performance of, and SusieAir's interference with, conditions precedent to liability.

---

[4] In all but one of the cases cited by SusieAir, the dismissal for failure to perform conditions precedent was made upon a full factual record. *See Watson v. City of Salem*, 934 F.Supp. 643, 660 (D.N.J. 1995) (summary judgment); *First Atl. Leasing Corp. v. Tracey*, 738 F.Supp. 863, 868 (D.N.J. 1990) (summary judgment); *Mosley v. Femina Fashions, Inc.*, 356 N.J. Super. 118, 126 (App. Div. 2002) (denial of motion to enforce settlement agreement based on facts developed before the court). In the only case decided on a motion to dismiss, the breach of contract claim was dismissed even under Rule 9(c)'s generous standard because the complaint lacked any allegation that conditions precedent were met. *Sundholm v. eSuites Hotels LLC*, No. CIV. 14-1996, 2014 WL 5449975, at *7 (D.N.J. Oct. 27, 2014).

b.   Recoverable Damages

To state a claim for breach of contract, a plaintiff must allege damages. *Murphy*, 392 N.J. Super. at 265. SusieAir maintains that My Canary cannot allege damages because paragraph 8.4.2 of the contract limits My Canary's recoverable damages to a refund for deposit and the pre-buy survey, and the complaint does not allege that My Canary failed to receive those refunds. SusieAir also argues that paragraph 6.2 prohibits recovery of incidental and consequential damages and therefore bars any other damages sought by My Canary. My Canary responds that neither contractual provision prevents it from seeking recoverable damages for breach of contract.

The complaint alleges that, as a result of SusieAir's breach of contract, My Canary incurred "substantial direct damages" of "not less than $350,000" including "but not limited to financing fees, professional fees, loss of use of the deposit, travel expenses, and loss of the benefit of the bargain with SusieAir." [60] ¶¶ 56, 58. The complaint does not specifically seek refunds for the deposit and pre-buy survey (although it lists "loss of use of the deposit"), but it also does not allege that SusieAir refunded any money. (The parties' arguments tacitly suggest that My Canary has received refunds, but that is outside the scope of the complaint.) Paragraph 8.4.2 states that if SusieAir defaults, My Canary "shall have the option to terminate this Agreement by written notice to [SusieAir], and upon such notice" the deposit and pre-buy inspection payment would be returned, "this Agreement shall be of no further force or effect, and neither Party shall have any further liability or obligation to the other with respect to the Aircraft." [60-2] ¶ 8.4.2.

14

Contract interpretation is a matter for the court only when the term or provision at issue is unambiguous—otherwise it is an issue for the fact finder. *See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 523 (3d Cir. 1997) (applying New Jersey law). Ambiguity, however, is a question of law. *Id.* at 520. Neither party addresses whether the contract is unambiguous—and therefore whether its interpretation is properly before the court at the motion to dismiss stage—but I find that paragraph 8.4.2 is unambiguous. Paragraph 8.4.2 gives My Canary the *option* to terminate the contract upon SusieAir's breach, but it does not *require* termination and only limits damages to a refund if My Canary chose to terminate the contract. My Canary does not allege (and SusieAir does not argue) that My Canary sought to terminate the contract by written notice after SusieAir's breach, and the complaint is clear that My Canary is seeking the benefit of its bargain with SusieAir. Paragraph 8.4.2 does not bar My Canary from seeking other damages for breach of contract.

SusieAir also argues that My Canary's alleged contractual damages are barred by paragraph 6.2, which precludes an award of incidental or consequential damages. [60-2] ¶ 6.2. My Canary asserts that it has properly alleged direct damages recoverable for breach of contract. "Economic loss can take the form of either direct or consequential damages. A direct economic loss includes the loss of the benefit of the bargain," while "[c]onsequential economic loss includes such indirect losses as lost profits." *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555, 566 (1985); *see also ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d

659, 669 (3d Cir. 1998) (expectation damages are the preferred remedy for breach of contract and protect an injured party's interest in having "the benefit of the bargain" by placing "the aggrieved in as good a position as would have occurred had the contract been performed") (citing Restatement (Second) of Contracts §§ 344(a), 347) (applying Pennsylvania law but addressing general contract principles). My Canary specifically seeks "the loss of the benefit of the bargain with SusieAir," meaning direct expectation damages to put My Canary in as good a position as it would have been in had the contract been performed—such damages are not precluded by a contractual limitation on consequential or incidental damages.

On reply, SusieAir argues that any direct damages are limited to the difference between the Mustang's market price and its contract price, and that My Canary failed to allege the difference in the Mustang's market and contract prices. But a reply brief is no place to raise an argument, *Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 669 (7th Cir. 2004), and "a plaintiff is not required to itemize his damages claims in his complaint," except for "items of 'special' damages, which must be pled with particularity." *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir. 1997); *see* 5 Wright & Miller Fed. Prac. & Proc. Civ. § 1256 (3d ed.); 5A Wright & Miller Fed. Prac. & Proc. Civ. § 1310 (3d ed.). My Canary has sufficiently alleged at least some recoverable damages to state breach of contract and implied covenant claims against SusieAir.

2. *Common Law Fraud*

Defendants move to dismiss My Canary's common law fraud claim, maintaining that New Jersey law does not permit concurrent fraud and breach of

contract claims and that the complaint does not plausibly infer that SusieAir had an intent to induce My Canary's reliance. My Canary responds that New Jersey law permits both fraud and contract claims based on the same underlying facts and that it sufficiently pled fraud.

Under New Jersey law, legal fraud is "a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 144 (3d Cir. 2001) (quoting *Jewish Center of Sussex 145 Cty. v. Whale*, 86 N.J. 619, 624 (1981)), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S.Ct. 773 (2014). Defendants argue that an intent to defraud cannot be plausibly inferred from My Canary's allegations because, based on the complaint, SusieAir had greater financial incentives to close on the My Canary agreement than the Cessna agreement. Defendants argue that SusieAir would have been paid $200,000 more by closing the deal with My Canary (paying $1.7 million for the Mustang) than with Cessna Aircraft (accepting a $1.5 million trade-in credit for the Mustang to purchase a Citation). But the complaint also alleges that Cessna offered an additional $500,000 off the Citation's price if the deal closed by June 27, 2014. And, as My Canary argues, the existence of a side agreement with Cessna Aircraft might have provided an incentive for SusieAir to abandon its agreement with My Canary if the Mustang needed additional repairs. My Canary pled that it would not have

entered into the agreement with SusieAir and taken steps to close on the Mustang if it had known that SusieAir had already engaged to trade-in the Mustang to Cessna Aircraft. At the motion to dismiss stage, My Canary need only plead factual allegations sufficient to raise a right to relief above the speculative level "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). My Canary's allegations raise a plausible inference of SusieAir's intent to induce My Canary's reliance.

Defendants also argue that New Jersey law does not permit concurrent fraud and breach of contract claims based on the same underlying facts, citing to *Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130 (3d Cir. 2001), and New Jersey district court cases for this proposition. As My Canary points out, in *Gleason*, the Third Circuit recognized that the Supreme Court of New Jersey has never held that a fraud claim cannot be maintained if based on the same underlying facts as a breach of contract claim. *Id.* at 144. Instead, in *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 580 (1985), which addressed a negligence claim and did not explicitly address fraud claims, the Supreme Court of New Jersey held that "as among commercial parties . . . contract law . . . provides the more appropriate system [as compared to tort law] for adjudicating disputes arising from frustrated economic expectations." Subsequently, New Jersey district courts have held that *Spring Motors* precludes fraud claims between commercial parties (other than fraud in the inducement), but New Jersey state courts have upheld fraud claims between

commercial parties. *Gleason*, 243 F.3d at 144; *see, e.g., Coastal Grp., Inc. v. Dryvit Sys., Inc.*, 274 N.J. Super. 171, 177 (App. Div. 1994) ("*Spring Motors* only precludes claims brought under tort principles which are inconsistent with the remedies authorized under the UCC," and "there is no need to elect" between fraud and breach of contract claims based on the same underlying facts). Because *Gleason* involved an appeal from summary judgment, the Third Circuit avoided taking sides on the issue by instead addressing the merits of the fraud claim. 243 F.3d at 144–45. In the absence of a clear determination by the Supreme Court of New Jersey, decisions by New Jersey's intermediate appellate courts are authoritative, unless there is a compelling reason to think that the state's supreme court would decide the issue differently. *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). *Spring Motors* did not address fraud claims, and defendants have not provided a compelling reason to ignore New Jersey appellate court opinions allowing concurrent fraud and breach of contract claims after *Spring Motors*. My Canary is not precluded from bringing concurrent fraud and breach of contract claims.

Defendants also argue that My Canary's common law and consumer fraud claims are based on promises of future conduct, citing (among other cases) to *Luscko v. Southern Container Corp.*, 408 Fed. App'x 631, 634 (3d Cir. 2010), for the proposition that "[a]s a general rule, fraudulent inducement cannot be predicated upon representations which involve things to be done in the future." (citing *Anderson v. Modica*, 4 N.J. 383, 391–92 (1950)). *Luscko*, however, provided an

exception to this rule: "[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." *Id*. The complaint alleges that, while it had a side deal with Cessna Aircraft, SusieAir entered into an agreement providing for My Canary's exclusive right to purchase the Mustang. These allegations are sufficient to raise a plausible inference that the defendants may have made a misstatement of present fact, namely, SusieAir's intention to make a deal with My Canary.

Defendants also maintain that its alleged silence about the Cessna deal is not actionable in absence of a duty to disclose, and there is no duty to disclose in an arms-length commercial transaction, citing to *Berman v. Gurwicz*, 189 N.J. Super. 89, 93 (Ch. Div. 1981), *aff'd*, 189 N.J. Super. 49 (App. Div. 1983), for the proposition that "[s]ilence, *in the face of a duty to disclose*, may be a fraudulent concealment." (emphasis added). But *Berman* also notes that "[p]artial disclosure may amount to fraud" if, in addition to a party's silence, they make "any statement . . . which tends affirmatively" to suppress or disguise the truth—"then the line is overstepped, and the concealment becomes fraudulent." *Id*. My Canary alleges that SusieAir offered an exclusive right to purchase the aircraft even though SusieAir was arranging to trade it in to Cessna Aircraft. These allegations are sufficient to raise a plausible inference of misrepresentation, even in the absence of a duty to disclose. My Canary has sufficiently pled a common law fraud claim.

### 3.    *New Jersey Consumer Fraud Act*

The New Jersey Consumer Fraud Act provides that "[a]ny person who suffers any ascertainable loss" as a result of "any method, act, or practice declared unlawful under this act" may bring a claim for relief. N.J.S.A. § 56:8-19. The act defines "person" to include companies and business entities, N.J.S.A. § 56:8-1(d), and therefore companies may maintain actions for consumer fraud violations. *Princeton Healthcare Sys. v. Netsmart N.Y., Inc.*, 422 N.J. Super. 467, 472 (App. Div. 2011). Under the act, an unlawful practice includes "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." N.J.S.A. § 56:8-2. Merchandise means "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale," N.J.S.A. § 56:8-1(c), including merchandise purchased for use in business operations. *Coastal Grp.*, 274 N.J. Super. at 179. And sale to the public refers to "the public at large." *Princeton Healthcare*, 422 N.J. Super. at 473. Defendants argue that the Mustang is not "merchandise" under the act because a $1.7 million airplane is not a typical consumer good offered "to the public." My Canary responds that SusieAir advertised the Mustang to the public and that consumer fraud claims have been permitted for a business's purchase of expensive merchandise, such as a yacht or a crane.

Because consumer fraud protections extend to companies and merchandise purchased for business operations, "it is the character of the transaction, not the

identity of the purchaser, which determines whether the CFA is applicable." *Princeton Healthcare*, 422 N.J. Super. at 473. This determination requires a "case by case analysis," *id.*, and there is no bright-line rule as to what constitutes a consumer transaction or sale of merchandise to the public. Transactions that tend not to be covered under the consumer fraud act include products or services that are unique, heavily customized or negotiated, or for wholesale or resale. *See, e.g., J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1273–74 (3d Cir. 1994) (purchase of franchise not covered); *Princeton Healthcare*, 422 N.J. Super. at 473–74 (custom computer software installation, involving a heavily-negotiated contract and two-years of evaluating proposals, not covered); *Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 14 (App. Div. 2006) (purchase of 10,000 ink cartridges for resale not covered). Conversely, transactions involving standardized or mass-produced products that do not require individualized customization or extensive bargaining are covered if the products are offered to the public at large—even if only to a limited clientele, due to the product's expense or uncommon nature. *See, e.g., Prescription Counter v. AmerisourceBergen Corp.*, No. CIV A 04-5802 SRC, 2007 WL 3511301, at *16 (D.N.J. Nov. 14, 2007) (business's purchase of computer hardware and software covered because they were available to the public at large, although only suited to the needs of a limited clientele); *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F.Supp.2d 494, 509 (D.N.J. 1999) (business's purchase of large and expensive crane was a consumer transaction because the crane was a commonly used piece of machinery in construction and its purchase did not require

extensive customization or negotiations); *Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co.*, 226 N.J. Super. 200, 209–12 (App. Div. 1988) (act applicable to corporation's purchase of yacht), *aff'd*, 118 N.J. 249 (1990).

Here, My Canary alleges that SusieAir had Chicago Aviation place advertisements for the Mustang, My Canary responded with an offer to purchase, and the parties then entered into negotiations and signed the aircraft purchase agreement within two weeks. Taken together, these allegations support a plausible inference that the transaction was more akin to a business's one-time purchase of a standardized—albeit large and expensive product—rather than a heavily negotiated and individualized product. Although further factual development may reveal that this transaction is not entitled to consumer fraud protection, My Canary's allegations do not show that, as a matter of law, it cannot assert a consumer fraud claim for the purchase of the aircraft.

### 4. *Conspiracy*

Defendants move to dismiss My Canary's conspiracy claim, arguing that it is derivative of My Canary's other claims. My Canary's fraud claims have not been dismissed, however, and therefore that is not a basis to dismiss its conspiracy claim. In reply, the defendants also argue that the conspiracy claim was not pled with the particularity required by Federal Rule of Civil Procedure 9(b). But by raising it on reply, this argument has been waived. *See Pugel*, 378 F.3d at 669. In any event, the who, what, when, where, and how of the alleged fraud are sufficiently alleged because the misleading representations, the related transactions, and their participants are described, and it is reasonable to infer the scope of the alleged

conspiratorial agreement as coextensive with the alleged fraud. Defendants are on sufficient notice that they are accused of conspiring to commit fraud.

### 5. *Constructive Trust*

My Canary also brings a claim against SusieAir for a constructive trust on the Citation that SusieAir purchased from Cessna in return for trading in the Mustang. SusieAir seeks dismissal on the basis that a constructive trust is a remedy, not a cause of action. My Canary responds that, in contrast to the New Jersey district court cases cited by SusieAir, New Jersey appellate courts have recognized the imposition of a constructive trust as its own cause of action.

The Supreme Court of New Jersey has recently described a constructive trust as a "remedy," specifically an equitable remedy imposed to prevent an unjust enrichment when a "wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship" results in a transfer of property. *Thieme v. Aucoin–Thieme*, No. 076683, 2016 WL 7190062, at *11 (N.J. Dec. 12, 2016) (quoting *D'Ippolito v. Castoro*, 51 N.J. 584, 589 (1968)). This is in accord with the general understanding that a "[c]onstructive trust is a remedy, not a cause of action." Restatement (Third) of Restitution & Unjust Enrichment § 55 cmt. f (2011); *see* 76 Am. Jur. 2d Trusts § 169; 90 C.J.S. Trusts § 11. The New Jersey appellate cases cited by My Canary may reference a constructive trust as a claim or a cause of action, but when read in their entirety, the opinions treat a constructive trust as an equitable remedy for underlying fraud or unjust enrichment. *See Jersey City v. Hague*, 18 N.J. 584, 595–600 (1955) (recognizing constructive trust as available equitable relief to recover funds allegedly extorted by city employees);

*O'Hara v. O'Hara*, No. A-2913-14T3, 2016 WL 731863, at *4 (N.J. Super. Ct. App. Div. Feb. 25, 2016) (stating that the plaintiff "pled a cause of action for a constructive trust" while addressing "whether a constructive trust is the appropriate equitable remedy" for the defendant's alleged unjust enrichment); *Polk v. Schwartz*, 166 N.J. Super. 292, 298 (App. Div. 1979) (constructive trust on properties acquired by defendants could be plead as "alternate or additional equitable relief" to money damages for defendants' alleged financial mismanagement of business). Because a constructive trust is an equitable remedy, not an independent cause of action, Count 12 is dismissed for failure to state a claim.[5]

## IV.    Conclusion

SusieAir and Bender's motion to dismiss, [61], is granted in part, denied in part. This court has personal jurisdiction over Bender. Count 12 is dismissed.

ENTER:

Manish S. Shah
United States District Judge

Date: 2/15/2017

---

[5] This opinion does not address whether a constructive trust is an available remedy. *See also* Fed. R. Civ. P. 54(c) (final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings).